IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KATHERINE FORD )
)
v. ) NO. 3-13-1122
) JUDGE CAMPBELL
HUMANA, INC. )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 16). For the reasons stated herein, Defendant's Motion is GRANTED, and this action is DISMISSED.

FACTS[1]

Plaintiff Ford has brought this action against her former employer, Defendant Humana, Inc. She alleges that Defendant discriminated against her because of her gender and retaliated against her because of her gender, complaints of discrimination, and the filing of an internal complaint, all in violation of both federal and state law.

Plaintiff began her employment with Defendant in 2011, as an agent in Defendant's Las Vegas office, selling various insurance products. Soon after starting with Defendant, Plaintiff attended three weeks of training in Tampa, Florida.[2] Plaintiff asserts that she was very successful and received stellar evaluations in the Las Vegas office.

In 2012, because of a personal need to be closer to her family, Plaintiff applied for and was hired to be a sales representative in Defendant's Nashville office. Around the same time, Hall also

---

[1] The Court has drawn these facts from Plaintiff's Complaint (Docket No. 1) and Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts (Docket No. 28).

[2] While at the training, she met Ryan Hall, a traditional insurance products manager from Iowa, who also worked for Defendant. Plaintiff alleges that Hall was "very friendly" and flirtatious with her.

moved to the Nashville office to be a Market Manager. Defendant selected Plaintiff for the open position instead of a male candidate with similar qualifications. There were 16 agents in the Nashville office, 11 males and 5 females. Plaintiff claims she received a "lukewarm" reception when she arrived in Nashville, was not given business cards, and was not given as many "leads" as she had been receiving in Las Vegas.

If a potential client expresses an interest in Defendant's products by contacting the corporate clearinghouse/call center, Defendant assigns the "lead" to an agent in the market in which the potential client is located. If a potential client expresses an interest in Defendant's products by contacting Defendant's local office, managers e-mail these "informal leads" to the agents. After Plaintiff's move to Nashville, Defendant sent her 240 clearinghouse leads and 24 informal leads between August 1, 2012, and December 31, 2012. Plaintiff received leads in 14 different counties.[3]

As of October 15, 2012, Plaintiff had closed only one sale, despite being given 86 leads in 13 counties. Plaintiff had only six sales through the end of October. Plaintiff received 87 leads after October 31, 2012, and closed only 14 sales. Plaintiff continued to feel she was not getting support from management and, on November 29, 2012, she filed a complaint with Defendant's Associate Relations Department ("ARD"). Plaintiff complained that she felt she was being discriminated against by her management team and that she had a lack of support and communication and no follow-up on issues.

On January 7, 2013, Plaintiff sent an e-mail to her managers expressing her disappointment regarding the perceived lack of communication, dialogue and overall support she had received from

---

[3] Although Plaintiff complained that 95% of her leads were in Sumner County, which was not a profitable county for Humana, only 38% of her leads were in Sumner County.

them. The next morning, Defendant's Sales Manager for Tennessee, Mr. Staffen, e-mailed Plaintiff to ask for an opportunity to meet with her regarding her complaints. After these attempts to schedule a meeting with Plaintiff failed, Plaintiff told Staffen that since she had already filed a complaint with the ARD, she thought it best to let them handle it. Plaintiff does not dispute that this was the first time Staffen had learned of Plaintiff's complaint; neither does she dispute that her Market Managers had no knowledge of her complaint at this time either.

Because Plaintiff refused to meet with Mr. Staffen at any time on January 8, 2013, Mr. Staffen became suspicious, checked on the Tennessee Department of Commerce and Insurance website and discovered that Plaintiff had been appointed to sell insurance products for competitors of Defendant (Physicians Life and Physicians Mutual) on December 17, 2012, while she was still employed with Humana. Plaintiff admits that being appointed with a competitor while still employed at Humana is a clear violation of Humana's conflict of interest policy, which Humana views as a terminable offense.

After calling Physicians Mutual and confirming that Plaintiff was working in that office and was in training that day, Mr. Staffen relayed this information to the ARD and stated that he would like Plaintiff's immediate termination because of her violation of the conflict of interest policy. Later that day, before Defendant had taken any action, Plaintiff e-mailed Mr. Staffen her resignation, which stated that she felt like she had no other option, as a result of her treatment from the management at Humana's Nashville office, but to accept a position with another company.

Plaintiff's Complaint alleges that she was forced to resign because of the retaliation and discrimination of Defendant against her and because of her gender. She filed a Charge of Discrimination with and received a Right to Sue Letter from the Equal Employment Opportunity

3

Commission ("EEOC"). She brings this action for violations of Title VII and the Tennessee Human Rights Act ("THRA").[4]

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

---

[4] An analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act. *Bredesen v. Tennessee Judicial Selection Commission*, 214 S.W.3d 419, 430 (Tenn. 2007); *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006).

GENDER DISCRIMINATION

Plaintiff has alleged that she has direct evidence of discrimination in that management told her that customers in a certain area expect to see an older guy come through the door. Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Direct evidence does not require a factfinder to draw any inferences. *Foster v. Michigan*, 573 Fed. Appx. 377, 393 (6th Cir. 2014) (citing *Jacklyn*). The Court finds that, because this remark requires a factfinder to draw further inference to support a finding of discriminatory animus, the remark is not direct evidence of discrimination.

Moreover, this alleged remark was isolated and ambiguous. Remarks that are general, vague or ambiguous do not constitute direct evidence of discrimination. *Sharp v. Aker Plant Servs. Group, Inc.*, 726 F.3d 789, 798 (6th Cir. 2013). There is no connection between this remark and an adverse employment action. Remarks that are unrelated to the decision-making process are not direct evidence of discrimination. *Campbell v. Kentucky Spine & Rehab, PSC*, 2014 WL 1056553 at * 6 (W.D. Ky March 19, 2014). For these reasons, the Court finds that the remark cited by Plaintiff is not direct evidence of discrimination; Rather, it is merely one factor to consider in whether Plaintiff has shown circumstantial evidence of discrimination.

To establish a *prima facie* case of gender discrimination through circumstantial evidence, Plaintiff must show that (1) she is a member of a protected group; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a

person outside the protected class or similarly situated non-protected employees were treated more favorably. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007).

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. If it does so, the burden returns to Plaintiff to show that Defendant's reason was a pretext for discrimination. *Sybrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557-58 (6th Cir. 2009). Throughout this burden-shifting approach, Plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate. *Id*.

Plaintiff is undisputedly a member of a protected group. Defendant argues that she cannot establish that she was subjected to an adverse employment action or that she was treated differently from similarly-situated male employees. [5]

In the context of a Title VII discrimination claim, an adverse employment action is defined as a materially adverse change in the terms or conditions of employment. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Id*. Adverse employment action required an official act of the enterprise, a company act. *Id*. An adverse employment action is one that affects employment or alters the conditions of the workplace. *Singer v. Cricket Communications Wireless Co.*, 2010 WL 4312872 at * 8 (M.D. Tenn. Oct. 25, 2010).

---

[5] To the extent Plaintiff intended to allege a *quid pro quo* discrimination claim as to the actions or inactions of Ryan Hall, she has not alleged sufficient facts from which a reasonable jury could find such a claim to be established. Moreover, the evidence shows that Hall did not make the decisions about distribution of leads to Plaintiff; the other market manager, Kuk, did.

In response to Defendant's Motion, Plaintiff states that the adverse employment action was Plaintiff's communication and sales opportunities/leads being cut so substantially that she was forced to file an Associate Relations complaint because of the preferential treatment her male colleagues were being provided. A failure to communicate does not constitute an adverse employment action. *Cardenas-Meade v. Pfizer, Inc.*, 510 Fed. Appx. 367, 373 (6th Cir. 2013).[6]

With regard to Plaintiff's leads or sales opportunities being substantially cut, Plaintiff has admitted that the *number* of leads is not an issue. Docket No. 19-1 (Plaintiff's Deposition), p. 46 (Dep., p. 180). Plaintiff's preference for the location of her leads does not render her assignment of leads a materially adverse employment action. Moreover, Plaintiff's personal opinion about PPO leads and HMO leads does not rebut Defendant's testimony that PPO leads and HMO leads are identical on their faces and in their end results. Similarly, Plaintiff's allegation that leads in McMinnville were somehow more favorable than leads in other areas has not been supported by the evidence. In any event, the location of Plaintiff's leads in this case does not constitute a material adverse employment action.

Further, Plaintiff has not shown that the nature of her leads was related to her gender. Plaintiff has not rebutted, for example, Defendant's testimony that a female agent had the highest number of leads in the Nashville office and a male agent had the lowest number of leads. Plaintiff argues that two males received leads in McMinnville and she did not, but she has failed to show that those leads were somehow "superior" to hers. Moreover, she has failed to show that the decision not to give her McMinnville leads was based upon her gender. She has not shown that having the

---

[6] Plaintiff admitted in her deposition that she has no knowledge of whether her managers failed to respond to other agents in the office. Docket No. 19-1, p. 47 (Dep., p. 182); p. 71 (Dep., pp. 278-79); and p. 72 (Dep., p. 284).

McMinnville leads benefitted the two males or that having the McMinnville leads would have positively impacted her. If these leads led to sales, which Plaintiff has not shown, there is no dispute that the amount of commissions on those sales would be identical to the amount of commissions on any other sales.

For all these reasons, Plaintiff has not shown that she was subjected to an adverse employment action as that term is defined in Title VII. More specifically, Plaintiff has not shown that she was subjected to an adverse employment action based upon her gender.[7] And, even if Plaintiff had demonstrated an adverse employment action, she has not shown that similarly-situated male employees were treated differently with regard to lead location and assignment.[8]

## CONSTRUCTIVE DISCHARGE

Plaintiff did not allege constructive discharge in her EEOC complaint. Docket No. 19-12. She alleges that she was discriminated and retaliated against because of her sex, but she never mentions that she felt compelled to resign or was constructively discharged. Title VII requires that a plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. *Younis v.*

---

[7] The Court also notes that the three persons Plaintiff accuses of discrimination are the same three persons who hired Plaintiff instead of a similarly-qualified male candidate. Docket No. 28, ¶¶ 32-33. Thus, a strong inference exists that discrimination was not a determining factor for any adverse action by Plaintiff's managers. *Buhmaster v. Overnite Transportation Co.*, 61 F.3d 461, 463 (6th Cir. 1995) (*cited in Weakley v. Nashville Machine Elevator Co., Inc.*, 2014 WL 199919 at *13, n. 22 (M.D. Tenn. Jan. 16, 2014)). In addition, the Court notes that all three of these persons' income was based, at least in part, on how well the staff performed, so it was not in their best interest to sabotage Plaintiff's efforts in any way.

[8] Plaintiff references the treatment of her friend and co-worker, Jeffrey Humble, for example - that Humble was not given permission to work with doctors in the area but the manager gave that special permission to another male - indicating that, at least sometimes, if management was preferential, male agents were "poorly treated" as well. In claiming that Kuk "played favorites" in distributing leads, Plaintiff again cites the allegedly poor treatment of Humble, a male.

*Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2003-5(f)(1)). Claims that had already arisen at the time the EEOC charge is filed but are not included within the charge are outside the scope of the charge. *Ayala v. Summit Constructors, Inc.*, 788 F.Supp.2d 703, 718 (M.D. Tenn. 2011). Plaintiff resigned on January 8, 2013. Her EEOC charge was filed on March 3, 2013, and her EEOC charge indicates that the latest any discrimination took place was January 6, 2013.

Plaintiff has not responded to Defendant's argument that she failed to exhaust administrative remedies with regard to this claim. The Court finds that Plaintiff's constructive discharge claim should be dismissed without prejudice for failure to exhaust administrative remedies.

Even if Plaintiff had exhausted this claim, she has not shown that she was constructively discharged.[9] A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). To demonstrate a constructive discharge, Plaintiff must present evidence to show that (1) Defendant deliberately created intolerable working conditions, as perceived by a reasonable person,[10] and (2) Defendant did so with the intention of forcing Plaintiff to quit. *Id.*, at 728. To determine if there

---

[9] Plaintiff argues that she was constructively discharged and then argues that Defendant fired her. Defendant did not terminate Plaintiff's employment; she resigned.

[10] The Sixth Circuit has identified the following factors as relevant to determining whether a reasonable person would have felt compelled to resign: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or demeaning work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Laster*, 746 F.3d at 727.

9

is a constructive discharge, both the employer's intent and the employee's feelings must be examined. *Singer* at * 9. The manner in which an employer assigns job duties to an employee is insufficient to establish a constructive discharge. *Singer* at * 10.

Plaintiff's Complaint alleges that the retaliation and discrimination against her had risen to such a level that she was forced to resign on January 8, 2013. In Response to Defendant's Motion, Plaintiff asserts that because she was subjected to communication problems, inequitable lead type and location, and isolation, she was constructively discharged. The Court has already found these are not adverse employment actions. Taken together, they do not rise to the level to be deliberately created intolerable working conditions as perceived by a reasonable person. For all these reasons, Defendant's Motion for Summary must be granted as to Plaintiff's constructive discharge claim.

## RETALIATION[11]

Because Plaintiff has not established an adverse employment action, she cannot sustain a retaliation claim, which requires an adverse employment action as one of its elements. Therefore, Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim is granted.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

                                                  _____
                                                  TODD J. CAMPBELL
                                                  UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff does allege retaliation in her EEOC charge, specifically that she was retaliated against because of her gender, but she does not allege facts to support a retaliation claim. Docket No. 19-12.